IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HAROLD ALLEN,

    Plaintiff,

v.

FIRST NATIONAL BANK
OF OMAHA,

    Defendant.

3:18-CV-1216
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Harold Allen filed this action pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 alleging that Defendant First National Bank of Omaha violated the statute when it placed 594 automated telephone calls to his cellular phone after he had revoked consent to receive any further telephone calls. (Complaint, Doc. 1-2). Presently before the Court is Plaintiff's "Motion for Partial Summary Judgment for 236 Telephone Calls" (Doc. 27). For the reasons set forth below, the Court will deny Plaintiff's Motion.

### II. STATEMENT OF UNDISPUTED FACTS

Plaintiff has submitted a Statement of Undisputed Material Facts (Doc. 28) as to which he submits there is no genuine issue or dispute for trial. In response, Defendant submitted a "Counter Statement of Facts in Support of its Opposition to Plaintiff's Motion for Partial Summary Judgment," (Doc. 37) wherein it provides an additional statement of facts it

deems relevant to the present Motion. As Defendant did not directly respond to the numbered paragraphs within the Statement of Undisputed Material Facts provided by Plaintiff, the following facts have been deemed admitted.[1]

On May 25, 2016, Plaintiff called Defendant. (Doc. 28 at ¶ 5). During that phone call, Plaintiff stated: "I ask that you please stop calling any phone number regarding any account, but you can contact me by mail." (*Id.* at ¶ 7). During this call, Defendant was not engaging in telemarketing. (*Id.* at ¶ 16). The phone call between Plaintiff and Defendant was recorded and transcribed. (*Id.* at ¶ 6). After May 25, Plaintiff never gave consent for Defendant to call his cell phone. (*Id.* at ¶ 14).

After May 25, 2016, Defendant called Plaintiff's cell phone number 594 times. (*Id.* at ¶ 9). All of those telephone calls were originated in the United States. (*Id.* at ¶ 13). None of those calls were placed for an emergency purpose. (*Id.* at ¶ 15). Of the 594 calls, 236 were placed using a prerecorded voice. (*Id.* at ¶ 11). A corporate designee of Defendant confirmed that each of those 236 calls would have played a prerecorded voice, even if the

---

[1] Pursuant to Local Rule 56.1, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement [of material facts submitted by the moving party] as to which it contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56.1. Here, Defendant submitted its own statement of material facts, none of which respond directly to the numbered paragraphs submitted by Plaintiff. (*See* Doc. 27). As such, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted," as they were not "controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1.

recipient's equipment did not record the message for some reason, such as if the recipient's voicemail was full. (*Id.* at ¶ 12).

At all relevant times, Plaintiff's cell phone number has been 570-401-6330, and Defendant knew that Plaintiff's cell phone number was assigned to a cellular telephone network. (*Id.* at ¶¶ 3, 4).

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality,... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the

record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

4

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is necessary.[2]

## IV. ANALYSIS

The TCPA was enacted to protect consumers from receiving intrusive and unwanted calls. *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 268 (3d Cir. 2013) (citing *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)). The TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The Act provides a private cause of action

---

[2] *See Guidotti v. Legal Helps Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013):
Under Rule 56, . . . a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of ... the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

716 F.3d at 772. *See also, Doebblers' Penn. Hybrids, Inc. v. Doebbler*, 442 F.3d 812, 820 (3d Cir. 2006)(stating that credibility determinations "are inappropriate to the legal conclusions necessary to a ruling on summary judgment. . . .A District Court should not weigh the evidence and determine the truth itself, but should instead determine whether there is a genuine issue for trial."); *J.F. Feeser, Inc v. Serv-A-Portion, Inc.*, 909 F.2d. 1254, 1531 (3d Cir. 1990) ("We are keenly aware that credibility determinations are not the function of the Judge; instead the non-movant's evidence must be credited at this stage.").

for violations of this subsection, or of the regulations promulgated thereunder, allowing for recovery of either the actual monetary loss of such violations or statutory damages of $500 for each violation, whichever is greater. *Id.* at § 227(b)(3). If the court finds that the defendant "willfully or knowingly" violated the this subsection of the TCPA, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available" under this subsection. *Id.*

Here, it is undisputed that during a May, 25, 2016 phone call with a customer service representative of First National Bank of Omaha, Plaintiff stated: "I ask that you please stop calling any phone number regarding any account, but you can contact me by mail." (Dep. of Paul Osborne, at 18:10-18; Pl.'s Ex. E, May 25, 2016 Call Recording, at 02:36-02:42). The parties do not dispute that Defendant then placed 594 phone calls to Plaintiff after May 25, 2016, 236 of which were made using a prerecorded voice. (Dep. of Osborne, at 80:6-22, 36:20-25, 37:1-4). Nor do the parties dispute that none of those 236 prerecorded voice phone calls were made for an emergency purpose. (Doc. 28 at ¶ 15). There is further no dispute that, at all relevant times, Defendant knew Plaintiff's phone number was assigned to a cellular telephone service. (Dep. of Osborne, at 78:11-21). However, the Court will not grant summary judgment, as disputed issues of material fact remain surrounding whether Plaintiff effectively communicated revocation of his prior consent to be contacted by Defendant by phone during the May 25, 2016 call which can only be resolved by a jury.

In support of his Motion, Plaintiff argues that he is entitled to summary judgment because he "clearly revoked his consent to receive further telephone calls using a reasonable method," therefore "any calls placed after May 25, 2016 were placed without consent." (Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, Doc. 29 at 9). By contrast, Defendant argues that summary judgment should be denied because (1) whether Plaintiff's revocation was reasonable presents an issue of material fact, and (2) Plaintiff cannot revoke his consent unilaterally because Plaintiff's express consent was based upon a contract.[3] (*See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, Doc. 36 at 3–14).

---

[3] Defendant further argues that Plaintiff's Motion for Summary Judgment should be denied because Plaintiff lacks standing, and because the cardholder agreement limits liability. (*See* Doc. 36 at 14–22). As to Plaintiff's standing, Defendant asserts that "[g]iven Plaintiff and his counsel's concerted effort to build a TCPA case, Plaintiff lacks standing because he is not a member of the class of persons that the TCPA was designed to protect and because he did not suffer the type of harm that the TCPA was designed to prevent." (Doc. 36 at 14). However, numerous courts have found plaintiffs to have constitutional standing in TCPA cases nearly identical to the circumstances presented here. *See Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017) (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding a plaintiff has Article III standing when he alleges receipt of an unwanted call on his phone, as Congress has "squarely identified this injury" and "TCPA claims closely relate to traditional claims for 'for invasions of privacy, intrusion upon seclusion, and nuisance [which] have long been heard by American courts.'"); *Zondlo v. Allied Interstate, LLC*, 290 F. Supp.3d 296, 300–02 (M.D. Pa. 2018) (rejecting the defendant's argument that the plaintiff "wanted" to receive phone calls from the defendant, and finding that "because the plaintiff alleges that she received unwanted phone calls from the defendant, in violation of the TCPA, plaintiff has suffered an injury and does have standing to pursue this claim").

As to the cardholder agreement, Defendant provides no authority as to how a provision that requires the consumer to notify the company of any potential lawsuit within 90 days can limit liability under the TCPA. Moreover, courts have previously found that the "notice and cure" clauses do not bar claims under the TCPA. *See Colon v. Nationstar Mortgage, LCC*, No. 1:15-cv-22961-UU, 2015 WL 7422598, at *2 (S.D. Fla. Nov. 17, 2015) ("the notice and cure provision . . . cannot be stretched to ensnare pre-suit conduct concerning a consumer protection statute that is not directly connected to the performance of the duties in the [contract]").

The Third Circuit has previously held that "the TCPA allows consumers to revoke their prior express consent" to receive calls regulated by § 227(b). *Gager*, 727 F.3d at 270. The Third Circuit found that while the TCPA does not contain language expressly allowing consumers to revoke their prior consent, this conclusion is consistent with (1) the common law concept that consent is revocable, (2) the TCPA's purpose, and (3) the FCC's decision in *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (2012).[4] *Id.*

While the Court in *Gager* did not elaborate on the specific methods a consumer may use to revoke consent, the Federal Communications Commission (the "FCC"), the agency tasked with implementing the TCPA, stated in a 2015 Declaratory Ruling and Order that "consumers may revoke consent in any manner that clearly expresses a desire not to receive further messages." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (2015 Declaratory Ruling), 30 FCC Rcd. 7961 at ¶ 63 (2015). The 2015 Declaratory Ruling goes on to state that consumers can revoke "using any reasonable method including orally or in writing." *Id.* at ¶ 64. In a footnote to the 2015 Declaratory Ruling, the FCC stated that when assessing any particular means of revocation

> we will look to the totality of the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a

---

[4] In *SoundBite*, the FCC issued a declaratory ruling to resolve the issue of whether "a consumer's prior express consent to receive text messages from an entity can be construed to include consent to receive a final, one-time text message confirming that such consent has been revoked," concluding that a text message confirming an opt-out request is permissible under the TCPA. *SoundBite*, 27 FCC Rcd. at ¶¶ 9, 15.

8

reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance, and whether the caller could have implemented mechanisms to effectuate a requested revocation without incurring undue burdens.

*Id.* at ¶ 64 n. 233. The 2015 Declaratory Ruling further provided examples of how consumers may revoke their consent, such as "by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities." *Id.* at ¶ 64.

The D.C. Circuit in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018) upheld the FCC's approach to revocation of consent outlined in the 2015 Declaratory Ruling, "under which a party may revoke consent through any reasonable means clearly expressing a desire to receive no further messages from the caller." In so holding, the Circuit Court specifically cited to the FCC's use of the "totality of the circumstances" method for assessing whether the revocation meets the "reasonable means" standard. *Id.* at 709 (citing 2015 Declaratory Ruling, 30 FCC Rcd. at ¶ 64 n. 233).

Here, a review of the record reveals that Plaintiff's statement of facts, though undisputed, do not give a full picture of the circumstances of Plaintiff's asserted revocation of consent.

The record indicates that Plaintiff held two credit card accounts with Defendant: one Overstock account and one National Rifle Association ("NRA") account. (Def.'s Ex. A, Dep. of Harold Allen, at 82:8-23). The credit cards were each subject to the terms of a Card

Member agreement. (*See* Def.'s Ex. B, Card Member Agreements, Doc. 36-2). On page seven of each Card Member Agreement it states the following:

**COMMUNICATIONS WITH YOU AND OTHERS:** We may call or e-mail you (using live operators, automatic dialing devices, or recorded messages) at home or work and those calls or e-mails will not be considered unsolicited. If you provide a cell phone number to us, either on the application or to a representative, or if you place a cell phone call to us, you agree that we may contact you (including for collection purposes) at that cell phone number. We may monitor or record any calls we make or receive.

(*Id.* at 19).

Paul Osborne, Managing Director of Collections and Recovery for First National Bank of Omaha, testified during his deposition that prior to May 25, 2016, both of Plaintiff's credit card accounts were current and not in default. (Dep. of Osborne, at 10:3-5, 95:17-19).

On May 25, 2016, Plaintiff contacted Defendant's Customer Care Department by phone. (Dep. of Osborne Dep. at 18:5-18). During the May 25, 2016 phone call, Plaintiff spoke with a Customer Care representative named Crystal Madden. (Def.'s Ex. F, Affidavit of Crystal Madden, Doc. 36-6, at ¶ 6). The phone call began with Ms. Madden asking Plaintiff for his account number, which Plaintiff indicated he did not have and instead provided his social security number. (Pl.'s Ex. E, May 25, 2016 Call Recording, at 00:00-00:18). Ms. Madden then asked Plaintiff to state his first and last name and asked him which account he was calling about. Plaintiff then provided his full name and indicated that he was calling regarding both of his accounts. (*Id.* at 00:20-00:30). Plaintiff then asked Ms.

Madden for her phone extension and employee ID number, which she provided. (*Id.* at 00:30-00:50). Ms. Madden then stated that she had accessed Plaintiff's Overstock account, and asked Plaintiff what he would like to do. (*Id.* at 00:59-01:02). Plaintiff then proceeded to ask for information about both accounts, including information about interest accrual, the account balances, and the last four digits of each account number. (*Id.* at 01:04-2:26).

Plaintiff then asked, "which address do you have on file for me?" to which Ms. Madden responded, "PO Box 153, White Haven, PA." (*Id.* 02:27-02:35). Immediately after Ms. Madden read the address, Plaintiff stated: "I ask that you please stop calling any phone number regarding any account, but you can contact me by mail." (*Id.* at 02:36-02:42). Ms. Madden responded: "OK, let me . . . I have to go into those separately to do that. Um, bear with me one moment." (*Id.* at 02:43-02:47). Plaintiff first responded: "OK," then, a few seconds later, stated: "Alright, I appreciate your assistance, ma'am. Thank you." (*Id.* at 02:55-02:58). Plaintiff then immediately hung up the phone.

In an affidavit, Ms. Madden stated that "it is the procedure of the Customer Care Department, that when a customer calls on a current account and asks that FNBO no longer contact them, but fails to verify their contact information and/or clarify their intentions regarding which calls they are referring to, their request is treated as if the customer wishes to be removed from FNBO's solicitation/telemarketing calls and communications," and that "no verification of the customer's contact information is needed for this request." (Def.'s Ex. F, Affidavit of Crystal Madden, Doc. 36-6 at ¶ 15). The affidavit further states that "[w]hen a

customer requests a change in receiving important account information, in order to complete that request a verification of the contact information FNBO used to reach a customer is required." (*Id.* at ¶ 16). Ms. Madden further stated that "Mr. Allen did not provide me with an opportunity to verify his contact information nor did he advise of what information from FNBO he no longer wished to receive, therefore I treated his request as a request not to receive solicitation/telemarketing calls from FNBO," and that she "marked the account accordingly." (*Id.* ¶ 17).

In the Account Notes for a credit card under the name "Harold Allen," an account number ending with "7131," and a product name of "CLS," a note was made on May 25, 2016 at 11:25 a.m. stating: "MAIL; NO TELEMARK; NO CHECKS; ANY INSERTS." (Def.'s Ex. C, FNBO Account Notes, Doc. 36-3 at 5). Similarly, in the Account Notes for another credit card under the name "Harold Allen," but with an account number ending in "0843," and with a product name of "CLS NRA," it indicates that on May 25, 2016 at 11:31 a.m., a note was made stating: "MAIL; NO TELEMARK; NO CHECKS; ANY INSERTS." (*Id.* at 2).

Further, Mr. Osborne testified during his deposition that, "[b]ased off of the representative that took the phone call and the actions that the representative did, based off of her procedures and training, she took the information that Mr. Allen was wanting him [sic] to be removed from any telemarketing/solicitations in the future on that account." (Dep. of Osborne at 18:25, 19:1-5). Mr. Osborne further testified that "our representatives in the customer service area, based off of their procedures, customers that are asking not to

receive phone calls generally is [sic] talking about telemarketing or solicitations. They would not necessarily think of collections." (*Id.* at 21:9-13).

Mr. Osborne also testified that shortly after May 25, 2016, Plaintiff stopped making payments on both credit card accounts. (*Id.* at 96:10-13). Mr. Osborne testified that at some point after he stopped paying, Plaintiff's accounts were placed in his department, Collections and Recovery, and that is when the department started calling Plaintiff. (*Id.* at 96:14-19). Plaintiff never made any further requests to Defendant to stop contacting him after the May 25, 2016 phone call. (Dep. of Allen at 115:19-24).

In sum, Plaintiff asserts that the May 25, 2016 phone call constituted a request for Defendant to stop contacting him by phone for any reason, but Defendant asserts that, consistent with its policies, it understood the May 25, 2016 phone call as a request by Plaintiff to be removed from Defendant's solicitation and telemarketing calls. Thus, considering the totality of the circumstances, the record reflects a factual dispute regarding whether Plaintiff effectively communicated his revocation of consent to be contacted by phone.

It is apparent from the recording of the May 25 phone call that after Plaintiff stated "I ask that you please stop calling any phone number regarding any account, but you can contact me by mail," Ms. Madden was trying to follow Plaintiff's instructions and fulfill his request. Ms. Madden indicated that, in order to complete Plaintiff's request as she understood it, he needed to "bear with [her] one moment" while she went into each of his

two accounts separately. Plaintiff initially indicated that he understood that Ms. Madden required further time on the call by responding "OK." However, within ten seconds of his acknowledgment, Plaintiff abruptly hung up the phone, apparently declining to wait for Ms. Madden to complete his request. The record further reveals that Plaintiff was unable to confirm whether Ms. Madden fully understood the extent of his request, as when asked during deposition: "do you know if the operator understood or heard that request?" Plaintiff answered: "I don't recall." (Dep. of Allen, at 100:8-11). Thus, a jury must determine whether, under the "totality of the facts and circumstances surrounding that specific situation," Plaintiff "had a reasonable expectation that he [ ] could effectively communicate his [ ] request for revocation to the caller in that circumstance," considering that Plaintiff hung up the phone immediately after the customer service representative told him to stay on the line so she could complete his request. 2015 Declaratory Ruling at ¶ 64 n. 233.

Although this case presents a close call, it is within the province of the jury, not the Court, to resolve such genuine factual disputes. Further, courts within this Circuit and beyond have declined to grant summary judgment in TCPA claims where the circumstances surrounding a plaintiff's attempt to revoke consent are disputed by the parties. *See McBride v. Ally Financial, Inc.*, No. 15-867, 2017 WL 3873615, at *1 (W.D. Pa. Sept. 5, 2017) (finding a credibility determination is required when the parties dispute whether the plaintiff verbally revoked his consent); *see also Herrera v. First National Bank of Omaha, N.A.*, No. 2:17-cv-01136-RSWL-SKA, 2017 WL 6001718, at *4 (C.D. Ca. Dec. 4, 2017) (quoting *Walker v.*

*Transworld Sys.*, No. 8:14-cv-588-T-30MAP, 2014 WL 7225212, at *3 (M.D. Fla. Dec. 17, 2014) ("a factual dispute regarding alleged revocation of consent cannot be properly resolved on summary judgment"); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014) (finding that whether the plaintiff revoked his consent to receive calls was "exactly the kind of factual dispute that cannot properly be resolved on summary judgment" where the parties disputed whether plaintiff told defendant to "stop calling" twice); *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d. 1062, 1075 (D. Nev. 2019) (denying summary judgment where a factual issue as to the clarity of the plaintiff's purported revocation remained); *Bally v. First National Bank of Omaha*, No. 17-10632, 2017 WL 4841420, at *2 (E.D. Mich. Oct. 26, 2017) (finding that "[r]easonable minds could differ regarding whether Plaintiff clearly expressed his desire not to receive further calls from Defendant," where the defendant's representatives "aver that they did not clearly hear Plaintiff's request to stop calling and were unable to seek clarification because he immediately hung up the phone"). Therefore, the Court will deny Plaintiff's Motion for Summary Judgment on this basis.

Turning to Defendant's assertion that Plaintiff cannot revoke his consent unilaterally because Plaintiff's express consent was based upon a contract, Defendant primarily relies on Second Circuit precedent *Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51 (2nd Cir. 2017). In *Reyes*, the Second Circuit, noting that consent is not always revocable under the common law, made a distinction between consent provided "gratuitously," and consent included as an express provision of a contract. *Id.* at 57.

The plaintiff in *Reyes* initially provided his cellular phone number as part of an application for an automotive lease. *Id.* at 53. The plaintiff was subsequently issued a lease containing a provision that provided express consent for defendant to contact him at that number via an automatic dialing system or an artificial or prerecorded voice.[5] *Id.* at 53–54. After falling behind on payments, the plaintiff attempted to unilaterally revoke his consent to receive calls from the defendant by letter. *Id.* at 54. The Second Circuit affirmed the District Court's grant of summary judgment to the defendant, holding that "the TCPA does not permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent." *Id.* at 57. The Circuit reasoned that it "was well-established at the time that Congress drafted the TCPA that consent becomes irrevocable when it is integrated into a binding contract." *Id.* at 58.

Defendant also relies on the application of *Reyes* by the Middle District of Florida in *Medley v. Dish Network, LLC*, No. 8:16-cv-2534, 2018 WL 4092120, at *12 (M.D. Fla. Aug. 27, 2018). In *Medley*, the plaintiff provided her telephone number as part of an agreement

---

[5] The express consent provision at issue in *Reyes* stated:

> You [Reyes] also expressly consent and agree to Lessor [Ford], Finance Company, Holder and their affiliates, agents and service providers may use written, electronic or verbal means to contact you. This consent includes, but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems. You agree that Lessor, Finance Company, Holder and their affiliates, agents and service providers may use any email address or any telephone number you provide, now or in the future, including a number for a cellular phone or other wireless device, regardless of whether you incur charges as a result.

*Reyes*, 861 F.3d at 53–54.

that authorized the defendant to contact her at the telephone number she provided and later attempted to revoke her consent via faxes sent by her counsel. *Id.* at *1–3. The District Court granted the defendant's motion for summary judgment, finding that "in the absence of a statement by Congress that the TCPA alters the common-law notion that consent cannot be unilaterally revoked where given as part of a bargained-for contract, the Court will decline to do so." This application of *Reyes* was affirmed by the Eleventh Circuit, which found that "[p]ermitting [the plaintiff] to unilaterally revoke a mutually-agreed-upon term would run counter to black-letter contract law in effect at the time Congress enacted the TCPA." *Medley v. Dish Network, LLC*, 958 F.3d 1063, 1071 (11th Cir. 2020).

However, the Third Circuit explicitly rejected this contract law-based argument in *Gager*, finding that "the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement," and "the fact that Gager entered into a contractual relationship with Dell did not exempt Dell from the TCPA's requirements." *Gager*, 727 F.3d at 273–74. As such, district courts within this Circuit have previously declined to apply the Second Circuit's holding in *Reyes* as to revocation of consent to TCPA claims. *See McBride*, 2017 WL 3873615, at *2 ("*Gager* is one of the strongest statements, in terms of interpreting revocation-of-consent consistently with the remedial purposes of the TCPA; and the Court cannot lightly cast-aside language in *Gager* supporting a contrary conclusion"); *Franklin v. Navient Corp.*, No. 17-1640-RGA, 2019 WL 4222681, at *5 (D. Del. Sept. 5, 2019) ("Whatever the merits of *Reyes*, Third Circuit precedent is to the contrary"). Thus,

17

consistent with controlling Third Circuit precedent, the Court declines to adopt the approach to unilateral revocation of consent taken by *Reyes*.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Partial Summary Judgment for 236 Telephone Calls (Doc. 27) will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge